IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES, | ) | Cr. No. 07-00032 SOM |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTION TO SUPPRESS ITEMS OF |
| vs. | ) | EVIDENCE |
| | ) | |
| KOSE LASALLE, JR.,   (02) | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS ITEMS OF EVIDENCE

I.   INTRODUCTION.

Defendant Kose Lasalle moves to suppress information taken from one of his cellular telephones[1] that was seized from him when he was arrested on November 9, 2006. Lasalle argues that he has a reasonable expectation of privacy in the information stored in his cell phone, that the search incident to arrest exception does not apply in this case, and that the warrantless search of his phone therefore violated the Fourth Amendment. The Government contends that no warrant was needed to

---

[1] Although the present motion seeks to suppress information taken from two cellular phones that were seized from Lasalle, at the hearing on the matter, Lasalle clarified that this motion concerns information taken only from one of the phones. The parties agree that the phone at issue is identified as "Exhibit N-21," but disagree on whether the phone is a Motorola phone or a Nextel phone. For purposes of this motion, it is unnecessary to determine the brand of the phone.

This order concerns information obtained only from Exhibit N-21, as Lasalle agreed at the hearing that no information was taken from his other phone, identified as "Exhibit N-22." See Opp. at 2 n.1; Declaration of Wendy Matsuyama (4/23/2007) ("Matsuyama Decl'n") ¶ 7.

search Lasalle's phone because the search "falls within the 'search incident to arrest' exception to the Fourth Amendment." The court concludes that the exception does not apply and suppresses the evidence obtained from Lasalle's phone.

II.     FINDINGS OF FACT.

On May 3, 2007, this court conducted a hearing on the present motion. The only live testimony was by Wendy Matsuyama ("Officer Matsuyama"). Based on the parties' memoranda and Officer Matsuyama's testimony, the court finds the following by a preponderance of the evidence:[2]

1.   On November 8, 2006, law enforcement officers conducted a controlled delivery of a parcel to 1550 Davenport Place, Honolulu, Hawaii 96822. Matsuyama Decl'n ¶ 3. The parcel had previously been searched and found to contain approximately one pound of methamphetamine, which law enforcement had replaced with pseudo-methamphetamine. Id. Pursuant to a warrant, an electronic beeper that would give off a signal when the parcel was opened had been placed in the parcel before the controlled delivery. Id.

2.   Officer Matsuyama was one of the officers present during the controlled delivery. Id. She is a Honolulu Police Department officer and a federally cross-designated Drug

---

[2] Findings of fact and conclusions of law are presented in numbered paragraphs for ease of reference in future proceedings.

Enforcement Administration Task Force officer. Id. Officer Matsuyama testified that, during the controlled delivery, she was responsible for, among other things, gathering evidence.[3]

    3.   When the parcel was delivered, Lenny Li signed for it and took it into the Davenport Place residence. Id. ¶ 4. A vehicle later came to the residence, and Li got into it while Lasalle and Defendant Molia Wongsee got out of it and went into the residence. Id. When Lasalle and Wongsee came back out of the residence, Wongsee was carrying the parcel. Id. Both Lasalle and Wongsee got back into the vehicle and drove away from the residence. Id.

    4.   Law enforcement officers, including Officer Matsuyama, followed the vehicle to another residence in a public housing complex in Halawa, where Wongsee got out of the vehicle and took the parcel with him into the residence.[4] Id. ¶ 5. Shortly thereafter, at 1:15 p.m., the electronic beeper went off, signaling that the parcel had been opened. Id. Law enforcement officers went into the residence, where they found Wongsee with fluorescent powder from the parcel on his hands, indicating that

---

[3] In an effort to rule promptly and to avoid burdening the court reporter, this court did not request an expedited certified transcript of the hearing. The court has reviewed only the "rough" unedited transcript and therefore cannot provide exact page and line citations to Officer Matsuyama's testimony.

[4] It is unclear whether Lasalle or Li went into the Halawa residence with Wongsee.

he had handled the parcel's contents.  Id.  Officer Matsuyama testified that the officers secured and cleared the residence within a few minutes.

     5.  Officer Matsuyama testified that, while other officers went into the residence to secure it, she stayed in the parking lot to watch the officers' cars, which had been damaged in that parking lot on prior occasions.

     6.  According to Officer Matsuyama, while she was in the parking lot, other officers arrested Lasalle in the residence.  She could not recall the exact time of Lasalle's arrest, but estimated that it occurred between 1:15 p.m. and 1:45 p.m.  She stated that Honolulu Police Department Detective Dave Nielson[5] ("Detective Nielson") searched Lasalle at the scene and told her that the two cell phones were taken from Lasalle. Officer Matsuyama testified that Detective Nielson gave the phones to her.  Officer Matsuyama did not see the arrest or search of Lasalle and was therefore unsure of whether the phones were in Lasalle's hands, pockets, or elsewhere when found by Officer Nielson.

---

[5] Officer Matsuyama's declaration refers to "Detective Nilson," but does not provide his first name.  At the hearing, Officer Matsuyama testified that she was uncertain of his first name, but believed it to be "Dave."  Additionally, although Officer Matsuyama's declaration refers to his last name as "Nilson," see Matsuyama Decl'n ¶ 6, she testified that his last name is actually "Nielson."

4

7.  Once the phones were turned over to Officer Matsuyama, she placed them in her "pelican brief" and "secured them as evidence for transportation back to the DEA office." See Matsuyama Decl'n ¶ 6.  Lasalle had no access to the phones after they were seized.

8.  The phones were taken by another officer to the Hawaii Airport Task Force office ("DEA office") located at 300 Rogers Boulevard, about a ten- to fifteen-minute drive from the Halawa residence.  Officer Matsuyama instructed the officer transporting the phones to place them on her desk at the DEA office.  Lasalle was taken in a separate vehicle to the DEA office at around the same time.

9.  While Officer Matsuyama was arranging for the phones to be taken to the office, the occupants of the Halawa residence consented to a search of the residence, which other law enforcement officers began.  After Officer Matsuyama had completed her arrangements for the phones, she joined other officers in the residence to assist with the search.  She searched and gathered evidence for approximately thirty minutes. When the search of the residence was complete, Officer Matsuyama and other officers took evidence from the residence to the DEA office.

10. Lasalle's phones were on Officer Matsuyama's desk at the DEA office when she arrived there.  Without getting

Lasalle's consent, she attempted to search the phones some time between 4:00 p.m. and 5:00 p.m, while Lasalle was being processed, booked, and fingerprinted in another room at the DEA office. The only reason she searched Lasalle's phones was because she thought they might contain evidence of a crime. Specifically, she believed that it "was highly likely that the participants in this drug smuggling scheme had a prior relationship and had communicated among themselves using their cellphones in order to facilitate the commission of an offense." Matsuyama Decl'n ¶ 7.

        11. Finding that Exhibit N-22 was "'locked' and access to it was restricted," Officer Matsuyama ultimately "did not search it." Id. ¶ 7. She did search Exhibit N-21, which was not "password protected or subject to any other access restrictions." Id. Officer Matsuyama obtained information, including "recent calls, text messages, and a directory or address book," from Exhibit N-21. Id. Her search at the DEA office was the first time Lasalle's phone was searched after his arrest.

III.      CONCLUSIONS OF LAW.

        1. Lasalle seeks to suppress the information obtained from Exhibit N-21, arguing that the warrantless search of the phone was not a search incident to arrest. Motion at 3. The Government contends that, "So long as the search occurs before the administrative processes relating to arrest and custody have

Case 1:07-cr-00032-SOM  Document 77  Filed 05/09/07  Page 7 of 18    PageID #: 223

been completed, the search is considered incident to arrest and may be conducted without a warrant." Opp. at 2-3 (citing <u>United Stats v. Edwards</u>, 415 U.S. 800, 803-04 (1974)). Because Lasalle's phone was searched "while he was being processed," the Government posits that the search was incident to Lasalle's arrest and therefore lawful.

        2.    Initially, the court notes that Lasalle does not challenge the lawfulness of his arrest or of the seizure of his phone. Similarly, the Government does not dispute Lasalle's assertion that he has a legitimate expectation of privacy in the information contained in his phone. Therefore, the only issue before the court is whether the warrantless search of Lasalle's phone, which took place at the DEA office while Lasalle was being processed, falls within the "search incident to arrest" exception to the requirement that searches be conducted pursuant to warrants.

        3.    "A 'search incident to arrest' is an exception to the general rule against warrantless searches." <u>United States v. Hudson</u>, 100 F.3d 1409, 1419 (9th Cir. 1996). The exception "permits law enforcement officers to conduct a warrantless search of a person who is arrested, and of his surrounding area, when the search is incident to arrest." <u>United States v. Smith</u>, 389 F.3d 944, 950-51 (9th Cir. 2004). "A legitimate 'search incident to arrest' is limited to the arrestee's person and to the area

7

'within his immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'" Hudson, 100 F.3d at 1419.

   4. The Supreme Court explained the basis for this exception in United States v. Robinson, 414 U.S. 218, 235 (1973):

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

Stated differently, searches incident to custodial arrests are "justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained." Edwards, 415 U.S. at 802-03; see Hudson, 100 F.3d at 1419 ("The justification for permitting a warrantless search is the 'need of law

enforcement officers to seize weapons or other things which might be used to assault an officer or effect an escape, as well as the need to prevent the loss or destruction of evidence.'").

5. The Government relies on Edwards, 415 U.S. at 803-04, for the proposition that, "[s]o long as the search occurs before the administrative processes relating to arrest and custody have been completed, the search is considered incident to arrest and may be conducted without a warrant." Opp. at 3 (citing Edwards, 415 U.S. at 803-04). The Government argues that, because the search of Lasalle's phone occurred while he was "being processed," it was incident to Lasalle's arrest.

6. In Edwards, 415 U.S. at 801, the defendant was lawfully arrested late at night and taken to the local jail, where he was placed in a cell. "[C]ontemporaneously with or shortly after the time [the defendant] went to his cell, the police had probable cause to believe that the articles of clothing he wore were themselves material evidence of the crime for which he had been arrested." Id. at 806. However, because "it was late at night" and "no substitute clothing was then available for [him] to wear," the defendant's clothing was taken from him the next morning, approximately 10 hours after his arrest and after substitute clothing had been purchased for him. Id. at 801, 806. Examination of his clothing revealed paint chips that matched paint chips taken from the crime scene, where

9

"entry had been made through a wooden window which apparently had been pried up with a pry bar, leaving paint chips on the window sill and wire mesh screen." Id. at 801-02. The clothing and "the results of its examination" were received at trial over the defendant's objection. Id. at 802. On appeal, the Sixth Circuit held that the search and seizure violated the Fourth Amendment. Id.

       7.   The Supreme Court granted certiorari to determine "whether the Fourth Amendment should be extended to exclude from evidence certain clothing taken from [the defendant] while he was in custody at the city jail approximately 10 hours after his arrest." Id. at 801. The Court held that "the Fourth Amendment should not be extended to invalidate the search and seizure in the circumstances of this case," reasoning that "searches and seizures that could be made on the spot at the time of arrest may be conducted later when the accused arrives at the place of detention." Id. at 802-03. The court stated that, "once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other." Id. at 807.

Additionally, "While the legal arrest of a person should not destroy the privacy of his premises, it does--for at least a reasonable time and to a reasonable extent--take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence." Id. at 808-09.

       8.   In United States v. Monclavo-Cruz, 662 F.2d 1285, 1289-90 (9th Cir. 1981), the Ninth Circuit narrowed the scope of the "dicta" in Edwards. In Monclavo-Cruz, two informants told law enforcement officers that the defendant was selling counterfeit immigration documents. Id. at 1286. An officer stopped a car that the defendant was a passenger in and asked the driver for his license. Id. When the driver admitted to being in the country illegally, the officer arrested him. Id. The officer then asked the defendant, who was on the passenger's side of the car, where she was from. Id. She also admitted to being in this country illegally and said that "she had no license, identification, or papers." Id. After the officer arrested her, he seized her purse from the car, which "was either in her hand, on her lap, or on the seat of the car at the time of the arrest." Id. The officer did not search her purse immediately "because he believed to do so would be a security risk," but took the defendant and her purse to the immigration office. Id. About an hour after the arrest and without a warrant, the officer searched the purse "in his office in [the defendant's] presence" and found

an alien registration number that "allowed him to learn that [the defendant] had used a false alien registration card at the time she applied for a driver's license." Id. The district court denied the defendant's motion to suppress evidence obtained from her purse. Id.

      9. On appeal, the Government argued among other things that Edwards justified the warrantless search of the defendant's purse. Id. at 1289. The Ninth Circuit stated:

> To analyze this issue properly, it is important to distinguish between the Edwards holding and its dicta on which the government relies. Edwards authorized a warrantless search of a suspect's clothes at the station house. The government, however, relies on the following statement in Edwards: "[S]earches and seizures that could be made on the spot at the time of the arrest may legally be conducted later when the accused arrives at the place of detention." Edwards, 415 U.S. at 803, 94 S. Ct. at 1237. We agree with the government that if we were to follow this dicta the warrantless search of [the defendant's] purse would probably be legal because the officer could probably have searched it at the time of arrest under Belton. We do not reach this question, however. We find that this broad statement in Edwards, in contrast to its holding, has been circumscribed by [United States v. Chadwick, 433 U.S. 1 (1977) and Arkansas v. Sanders, 442 U.S. 753 (1979)].

Id.

      10. After reviewing the Supreme Court's holdings in Chadwick and Sanders, the Monclavo-Cruz court "confine[d] the

Edwards exception to the person and clothing of an arrestee."
Id. at 1290. The Ninth Circuit continued:

> In reliance on this line of authority, we approved the warrantless search of an arrested person's wallet taken from his person. United States v. Passaro, 624 F.2d at 943; United States v. Ziller, 623 F.2d at 562-63. We find it significant that the Passaro court characterized the wallet of the arrested person as an "element of his clothing." Passaro, 624 F.2d at 944.

Id. The Ninth Circuit ultimately disagreed with the Government's argument that "a purse on the lap at the time of arrest is much like a wallet in the pocket," stating:

> Although we recognize that there is a fine line between a wallet on the person and a purse within an arrestee's immediate control, we hold that possessions within an arrestee's immediate control have fourth amendment protection at the station house unless the possession can be characterized as an element of the clothing, or another exception to the fourth amendment requirements applies.

Id.

      11.  The Government relies on Edwards in arguing that Officer Matsuyama's search of the phone was valid because it was conducted while Lasalle was being processed.  However, pursuant to Monclavo-Cruz, 662 F.2d at 1290, Edwards applies only to Lasalle's person or elements of Lasalle's clothing.  The phone is clearly not Lasalle's "person," and the Government conceded at the hearing that the phone was not an element of Lasalle's clothing when it was seized.  This court is therefore unpersuaded

that Edwards is applicable to Officer Matsuyama's search of Lasalle's phone.  See Monclavo-Cruz, 662 F.2d at 1290.

        12.  When the Edwards exception does not apply, "a search incident to arrest must be conducted at 'about the same time as the arrest.'"  United States v. Turner, 926 F.2d 883, 887 (9th Cir. 1991).  "There is no fixed outer limit for the number of minutes that may pass between an arrest and a valid warrantless search that is a contemporaneous incident of the arrest."  United States v. McLaughlin, 170 F.3d 889, 892 (9th Cir. 1999).  "Instead, courts have employed flexible standards such as 'roughly contemporaneous with the arrest' and within 'a reasonable time' after obtaining control of the object of the search."  Id. (internal citation omitted).

        13.  Acknowledging that the relevant inquiry turns "not upon the moment of arrest versus the moment of the search, but upon whether the arrest and search are so separated in time or by intervening acts that the latter cannot be said to have been incident to the former," Smith, 389 F.3d at 951, the Ninth Circuit has upheld searches incident to arrests that have occurred up to fifteen minutes after the search, but invalidated searches that occurred "thirty to forty-five minutes" after the arrests.  Compare Hudson, 100 F.3d at 1420 (upholding a search occurring three minutes after the arrest); United States v. Weaver, 433 F.3d 1104, 1106-07 (9th Cir. 2006) (upholding a

14

search that took place "ten to fifteen minutes" after the arrest as "a contemporaneous incident to the arrest" and stating that "the ten to fifteen-minute delay here is more like the five minute delay in McLaughlin than the thirty to forty-five minute delay in Vasey"); and McLaughlin, 170 F.3d at 893 (upholding a search that took place five minutes, "a relatively brief period of time," after the defendant was removed from the crime scene); Turner, 926 F.2d at 888; with United States v. Vasey, 834 F.2d 782, 787-88 (9th Cir. 1987) (invalidating a search that was conducted "anywhere from thirty to forty-five minutes" after the arrest).

14.   In the present case, Lasalle was arrested some time between 1:15 p.m. and 1:45 p.m., and Officer Matsuyama searched the phone some time between 4:00 p.m. and 5:00 p.m. Thus, the time period between the arrest and the search spanned somewhere between two hours and fifteen minutes to three hours and forty-five minutes.  The arrest and search also occurred at locations a few miles apart from each other.  Given the time period and physical distance between the arrest and search, the search was not "at about the same time of the arrest" or "roughly contemporaneous" with the arrest.  See McLaughlin, 170 F.3d at 892; Turner, 926 F.2d at 887.

15.   At the hearing on the matter, the Government pointed the court to two cases in support of its argument that,

even with the two to three hours between Lasalle's arrest and search, the search was incident to his arrest. Both cases are distinguishable. In Smith, 389 F.3d at 947, the search of the defendant's car occurred hours after Lasalle was arrested and did not involve anything as mobile as a car.

16. The Government also cites United States v. Scott, 428 F. Supp. 2d 1126, 1128 (E.D. Cal. 2006), in which the defendant's car overturned and fell down an embankment. Before the officers could search the car, "it was towed to the road because of safety concerns." Id. at 1130. The court noted, "The time that elapsed between the defendant's arrest and his car being connected to a cable, turned onto its wheels and then towed up the slope to the road was approximately forty to forty-five minutes." Id. Immediately after the car "was set upright on the road," which was about fifty minutes after the defendant's arrest, an officer searched it. Id. at 1130, 1133. Because a search of a vehicle "will not be considered remote from the time of the arrest if the search is conducted as soon as possible after the safety concern has been eliminated," the court concluded that the search was incident to the defendant's arrest. Id. at 1132-33.

17. Unlike in Scott, 428 F. Supp. 2d at 1132, the search of Lasalle's phone did not occur "as soon as possible after the safety concern has been eliminated." Although Officer

16

Matsuyama testified that the officers were concerned about the safety of their cars, no evidence in the record suggests that safety concerns led to a delay of two to three hours. Indeed, Officer Matsuyama herself did not have to spend all her time at the Halawa complex's parking lot watching cars, as that concern was apparently alleviated in time for her to help in the search of the Halawa residence. Additionally, unlike in Scott, the search in the present case occurred at a location several miles away from the arrest. The court is unpersuaded by the Government's reliance on Smith and Scott.

       18.  Because the search of Lasalle's phone was not roughly contemporaneous with his arrest, the "search incident to arrest" exception does not apply to the search. See McLaughlin, 170 F.3d at 892; Turner, 926 F.2d at 887. The Government does not argue that any other exception to the general rule against warrantless searches applies. Accordingly, Officer Matsuyama's search of Lasalle's phone without consent violated the Fourth Amendment, and the court grants Lasalle's motion to suppress evidence obtained from Exhibit N-21.

17

IV.     CONCLUSION.

The court grants Lasalle's motion to suppress and suppresses all information obtained from the search of Exhibit N-21.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 9, 2007.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

**United States v. Kose Lasalle, et al.**, **Cr. No. 07-00032 SOM; ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS ITEMS OF EVIDENCE.**